IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. C2-99-1181 |
| ) | |
| OHIO EDISON COMPANY, et al., ) | District Judge Sargus |
| ) | Magistrate Judge Kemp |
| Defendants. ) | |

**PLAINTIFF UNITED STATES' MEMORANDUM OF LAW
REGARDING THE SCOPE OF THE COURT'S AUTHORITY
TO ORDER SURRENDER OF EMISSION ALLOWANCES**

Plaintiff, the United States of America ("Plaintiff" or "the United States") submits this

Memorandum at the request of the Court and in partial opposition to the June 21, 2004 Motion in

Limine of Defendants, Ohio Edison Company and Pennsylvania Power Company ("Defendants"

or "Ohio Edison"), to exclude evidence offered to support Plaintiffs' proposed equitable

remedies.[1]  In this Memorandum, the United States addresses the Court's authority to require

Defendants to surrender and retire sulfur dioxide ($SO_2$) emission allowances as part of the

equitable relief the Court orders.  We demonstrate that the Court has authority to order such a

remedy under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b).

_____

[1] Plaintiffs will submit a complete response to Defendants' Motion in Limine on July 6, 2004.

**INTRODUCTION**

The United States brought this action under Section 113(b) of the CAA, seeking both injunctive relief and civil penalties.  In addition to seeking installation of Best Available Control Technology (BACT) at the Sammis plant, and assessment of civil penalties, the prayer for relief in the United States' complaint specifically requested that the Court "[o]rder Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused" by Defendants' violations.  United States' Amended Complaint at 26 (¶ 6). This request for relief encompasses a broad range of possible equitable remedies, including the surrender of $SO_2$ allowances under Title IV of the CAA, which Plaintiffs will present to the Court at trial.  As demonstrated below,  such a requirement is consistent with and authorized by the CAA's express affirmation, in Section 113(b)(3), of the district courts' broad equitable authority to fashion "any other appropriate relief."  42 U.S.C. § 7413(b)(3).

**ARGUMENT**

A.    **CAA Section 113(b)(3) Specifically Authorizes the Court to Order "Any Other Appropriate Relief" in Addition to Compliance and Civil Penalties**

The starting point for any analysis of the Court's equitable jurisdiction under Section 113(b) is the statute itself.  As noted, Section 113(b)(3) contains a broad grant of jurisdiction to district courts addressing any violation in actions brought under Section 113(b) for an injunction or a civil penalty.  In such an action, the "court shall have jurisdiction to restrain such violation, to require compliance, to assess such civil penalty . . . and to award any other appropriate relief." 42 U.S.C. § 7413(b).

**B.    Supreme Court Jurisprudence Confirms That This Statutory
Grant of Jurisdiction Must Be Read Broadly to Encompass the
District Courts' Traditional Equitable Jurisdiction**

Supreme Court authority supports the broad equitable authority of district courts to fashion an appropriate remedy.  "Unless [it] is otherwise provided by statute, all the inherent equitable powers of the district court are available for the proper and complete exercise of that jurisdiction."  *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).  This is particularly true when the public interest is involved, and the courts' equitable powers assume an even broader and more flexible character.  *Porter*,  328 U.S. at 398;  *Lemon v. Krutzman*, 411 U.S. 192, 200 (1973).

Absent any clear indication to the contrary by Congress, federal courts have the power to award any and all appropriate relief and remedies in a cognizable cause of action brought pursuant to a federal statute to vindicate a federal right.  *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 65-66 (1992) (Title IX suit);  *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) (stockholder civil action suit).  Where a federal statute provides for a general right to sue for an invasion of a legal right, federal courts may use any available remedy to make good the wrong done.  *Bell v. Hood*, 327 U.S. 678, 684 (1946) (Constitutional Fourth and Fifth Amendment case alleging false imprisonment).  The "comprehensiveness of . . .  equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.  Unless a statute in so many words, or by a necessary and inescapable inference, restricts the courts jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."  *Porter*, 328 U.S. at 398.

The court's equitable power to enforce a statute includes power to provide remedies for past violations, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 316-17 (1982), and restitutional remedies are within this broad grant of equitable power. *Porter*, 328 U.S. at 400-402. In *Porter*, the statute at issue (the Emergency Price Control Act of 1942), authorized enforcement by "'a permanent or temporary injunction, restraining order, *or other order* . . ..'" The Court held that the district court had authority to order restitution of rents collected by landlords in excess of the statute's prescribed maximums, not simply to restrain violations or order future compliance by injunction: "[T]*he term 'other order' contemplates a remedy other than that of an injunction or restraining order*, a remedy entered in the exercise of the District Court's equitable discretion." 328 U.S. at 399, citing *Hecht*, *supra*, 321 U.S. at 328.

While the Supreme Court has not spoken directly concerning the federal courts' ability to order restitutional remedies under the CAA, its decisions in the early 1980s defined the general scope of judicial equitable discretion in environmental cases involving statutory claims alleging Clean Water Act ("CWA") and/or other violations (e.g., nuisance).[2/] In the last of these cases – *Romero-Barcelo* – the Court recognized the ability of courts to order broad injunctive relief under Section 309(b) of the CWA, which contains language very similar to that of CAA Section 113(b).[3/] *Romero-Barcelo* involved a complaint by Puerto Rico's governor and residents to enjoin the Navy from aerial bombardment practice off the island's coast, alleging that such

---

[2/] *See generally City of Milwaukee v. Illinois*, 451 U.S. 304 (1981); *Middlesex County Sewerage Auth. v. National Seas Clammers Ass'n*, 453 U.S. 1 (1981); *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982).

[3/] Section 309(b) of the Clean Water Act provides: "The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction for any violation for which he is authorized to issue a compliance order under subsection (a) of this section. [In a]ny action under this subsection . . . [the district] court shall have jurisdiction to restrain such violation and to require compliance." 33 U.S.C. § 1319(b).

bombs were discharges that violated, *inter alia*, the permit requirements of the Clean Water Act. The district court found the Navy had violated the CWA but, in balancing the equities, refused to order the immediate cessation of the Navy's activities pending the Navy's application for a CWA permit. On appeal, the First Circuit concluded that the district court lacked discretion to deny the injunction. The Supreme Court reversed, holding that the district court had the equitable discretion to refuse an injunction, stating that it did "not read the [CWA] as intending to abolish the courts' equitable discretion in ordering remedies." 456 U.S. at 316 n. 11. Although *Romero-Barcelo* vindicated the district court's discretion to refuse an injunction under the CWA, its holding likewise makes clear that the CWA does not limit the courts' discretion to fashion broad equitable relief as well. Reaffirming previous decisions, the Court stated, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."[4]

Lower court decisions (including within the Sixth Circuit) have confirmed, consistently with this Supreme Court jurisprudence, the district court's right to mold its remedies to the needs of particular cases where nothing in the applicable statute evidenced Congressional intent to restrict such powers. *Bowles v. Skaggs*, 151 F.2d 817, 820 (6th Cir. 1945) (considering whether district court was authorized to order restitution of overcharges in action Emergency Price

---

[4] 456 U.S. at 313 (quoting *Porter*, 328 U.S. 395, 398 (1946)). In both *Romero-Barcelo* and *Hecht Co. v. Bowles*, 321 U.S. 321 (1944), the Court found nothing in the Clean Water Act's (CWA) language, structure, or legislative history evidencing Congress's intent to deny the court their equitable discretion, and reasoned that if Congress had intended to strip courts of equitable powers, it would have drafted it to say as much. *Romero-Barcelo* 456 U.S. at 316-318; *Hecht*, 321 U.S. at 329. *See also United States v. Metropolitan Dist. Comm'n*, 930 F.2d 132, 135 (1st Cir. 1991) (affirming based on *Romero-Barcelo* the district court's exercise of its broad remedial discretion to redress illegal sewage discharge violations of CWA by ordering construction of sewage treatment system and procurement of landfill for depositing treatment process sludge).

Control Act of 1942 and holding that restitution is restoration of status quo and falls within recognized equity powers of court).   Where a specific interest and right has been conferred upon the United States by statute, the remedies and procedures for enforcing that right are not to be narrowly construed so as to prevent the effectuation of the policy declared by Congress.  *United States v. York*, 398 F.2d 582, 586 (6th Cir. 1968).  Once the general equitable jurisdiction of the district court is properly invoked, the broad and flexible powers inherent in the jurisdiction may be utilized to fashion appropriate remedies for a particular case, even where the statute does not specifically authorize a civil remedy other than injunctive relief.  *Securities and Exchange Commission v. Wong*, 252 F. Supp 608, 613 (D.P.R. 1966).  Appellate courts review a district court's remediation order under an abuse of discretion standard.  *United States v. Deaton*, 332 F.3d 698, 714 (citing  cases) (4th Cir. 2003), *cert. denied*, 124 S.Ct. 1874 (2004); *see also U.S. Public Interest Research Group v. Atlantic Salmon of Maine, LLC*,  339 F.3d 23, 32 (1st Cir. 2003).

### C. The Availability of Other Remedies Under Section 113(b)(3) Does Not Imply a Limitation on the Court's Authority Under That Section to Order "Any Other Appropriate Relief"

Defendants appear to suggest in their June 21 Motion in Limine that because Section 113(b) authorizes courts to exercise their equitable jurisdiction to require compliance and to assess civil penalties, its authority to award "other appropriate relief" is cabined by the availability of these other forms of remedy.  *See* Defendants' Brief at 22-23 (if "other appropriate relief" includes an injunction, it must relate to compliance); *id*. at 27 (civil penalties are designed to deal with past harm, so "other appropriate relief" should not).

- 6 -

Any such proposed statutory construction is nonsensical.  There is no basis to infer that the availability of compliance orders and civil penalties under Section 113(b) was intended to limit the district court's authority to order "any other appropriate relief."  We agree that civil penalties may indeed address past harm, inasmuch as they may be based, *inter alia*, on the seriousness of the violations, 42 U.S.C. § 7413(e), although they are principally intended to deter violations of the statute.[5]  But it does not follow that Congress concluded that civil penalties could, in all circumstances, in all cases, sufficiently redress past wrongs so as to preclude other forms of relief.  To the contrary, Congress chose to reaffirm the district courts' traditional authority to order "any other appropriate relief" in addition to civil penalties and injunctive relief directed to cessation of violations and future compliance.

Defendants' proposed construction of the CAA contravenes established principles of statutory construction because, if accepted, it would render the "other appropriate relief" language of Section 113(b)(3) a nullity.  There would have been no reason for Congress to include this additional language if district courts were meant to be confined to enjoining present violations, requiring compliance, and assessing civil penalties, since all three of these remedies are already expressly enumerated in Section 113(b)(3).  "In construing a statute, a cardinal principle is to preserve the entire statute and accord each clause and word due effect."  *United States v. Menasche*, 348 U.S. 528, 538 (1955); *see also* 2A N. Singer, *Sutherland Statutes and Statutory Construction* § 46.06 (6th Ed. 2000).  In *Porter*, *supra*, the Supreme Court rejected a misconstruction of a statute's broad grant of jurisdiction similar to that advanced in Defendants'

---

[5] *See, e.g., United States v. Mac's Muffler Shop, Inc.*, 25 E.R.C. 1369, 1375 (N.D.Ga. 1986); *United States v. Velsicol Chemical Corp.*, 12 E.R.C. 1417, 1421 (W.D.Tenn. 1978); *United States v. Environmental Waste Control, Inc.*, 710 F.Supp. 1172, 1242 (N.D.Ind. 1989); *United States v. Midwest Suspension & Brake*, 824 F.Supp. 713, 738 (E.D.Mich. 1993).

motion in limine, holding that the statutory phrase "other order" gave the district court authority

to order restitution of rents collected by landlords in excess of the statute's prescribed

maximums, not simply to restrain violations or order future compliance by injunction.  328 U.S.

at 399, citing *Hecht*, *supra*, 321 U.S. at 328.

> **D.      Requiring SO₂ Allowance Surrenders is Consistent With**
> **Equitable Relief Courts Have Ordered in Analogous Cases**
> **Under the Clean Water Act**

While the courts have not had occasion to address the precise issue of restitutional relief

for CAA violations, courts have ordered, consistent with the jurisprudence discussed in Section

B above, restitutional relief in analogous cases under the Clean Water Act.  As noted above (*see*

*supra* p. 4 & n.3), the grant of authority to order relief under Section 309(b) is similar to that of

Section 113(b) of the CAA, and the Sixth Circuit has held that the CAA is to be interpreted *in*

*pari materia* with the CWA.  *See United States v. Stauffer Chemical Co.*, 684 F.2d 1174, 1187

(6th Cir. 1982).

Several decisions have affirmed the discretion of district courts to order remedial relief

for CWA violations, subject to two important limitations:  remedies designed to benefit the

environment injured by the violations must be ordered as an exercise of the court's equitable

jurisdiction (rather than being funded by assessed civil penalties), and such remedies must bear a

sufficient "nexus" to the violations at issue.  In *Public Interest Research Group of N.J. v. Powell*

*Duffryn Terminals Inc.*, 913 F.2d 64 (3d Cir. 1990), the court of appeals reversed the district

court's order directing that defendant, who had violated its CWA permit, deposit the civil

penalty assessed by the district court into a trust fund to be used for environmental improvement

projects.  The court of appeals held that civil penalties, once assessed, must be deposited in the

- 8 -

Treasury, and may not be diverted to remedial projects.  913 F.2d at 82; *accord United States v. Roll Coater, Inc.*, 21 Env't L. Rep. (Env. L. Inst.) 21073, 21077 (S.D. Ind. Mar. 22, 1991).  Both the *Powell Duffryn* and *Roll Coater* courts noted that remedial work could properly be ordered through the courts' own equitable jurisdiction when ordering injunctive relief, provided there was a sufficient nexus between the harm and the injunctive remedy.  *Powell Duffryn*, 913 F.2d at 82; *Roll Coater*, 21 Env't L. Rep. at 21077.  *See also United States v. Smithfield Foods, Inc.*, 982 F. Supp 373, 376 n.5 (E.D. Va. 1997) (recognizing that a court could order environmental projects to restore the environment injured by the CWA violations at issue, but because the government did not seek such injunctive relief, the full amount of relief was assessed as a civil penalty).

Pursuant to the CWA's grant of authority  "to enforce [ ] an effluent standard or limitation," 33 U.S.C. § 1365(a), other courts have required remediation of past violations, not simply to bring about prospective compliance, but instead to restore the *status quo ante* (prior to the violations), or to mitigate or compensate for past injury. *Atlantic Salmon*  339 F.3d at 23, involved a citizens' group suit against salmon farm operators to restrain the operators' pollution discharges.  The district court not only issued an injunction to stop the pollution discharges, it also ordered the companies to conduct remediation, including requiring specified periods of fallowing of net pens after the next harvest, prohibiting the future stocking of any of the companies' net pens with non-native strains of salmon, and ordering that each pen be stocked with only a one-year class of fish at any time. *Atlantic Salmon*, 339 F.3d at 27.  The court of appeals upheld the district court's remediation orders, stating that "[t]he authority to 'enforce' an existing requirement is more than the authority to declare that the requirement exists and repeat

- 9 -

that it must be followed.  So long as the district court's equitable measures are reasonably calculated to 'remedy an established wrong,' they are not an abuse of discretion." *Id*. at 32. "Injunctive remedies for past harm commonly dictate future conduct so as to mitigate past harm. To say that the injunction looks to the future does not alter the fact that it is rooted in past violations, nor prevent its aims or its effects from being remedial."  *Id*. at 33 (citation omitted).

The First Circuit's decision in *Atlantic Salmon* was consistent with its earlier decision in *United States v. Cumberland Farms of Connecticut, Inc*., 826 F.2d 1151, 1164 (1st Cir. 1987). In that case, the court of appeals affirmed the district court's injunction requiring wetlands restoration to remediate CWA violations that had resulted in wetlands destruction.  The court held that "the district court had [the] authority to issue such restorative orders so as to effectuate the stated goals of the Clean Water Act 'to maintain the chemical, physical, and biological integrity of the Nation's waters.'" *Id*. at 1164.  While the court of appeals explained its decision as related to the district court's authority to require and enforce compliance with the CWA, *id*., there is no question that the remedy granted was remedial or restitutional in nature, since it was designed to restore the environment, consistent with the goals of the statute.

Similar broad remedial relief for other CWA violations has been approved by other appellate courts.  In *Deaton*, *supra*, the Fourth Circuit affirmed an injunction requiring defendant to refill a ditch excavated in violation of CWA dredge and fill program "to restore their wetlands to their pre-violation condition."  332 F.3d at 702.  The court of appeals rejected defendant's argument that the injunction should have been limited to ordering defendants to haul away the fill, finding that the district court did not abuse its discretion in ordering a more environmentally protective remedy consistent with the CWA's goal of restoring and maintaining the physical and

biological integrity of the nation's waters.  *Id*. at 713-14.  *See also Natural Resources Defense Council, Inc. v. Southwest Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000) (upholding district court's order that shipyard found in violation of CWA NPDES permit conduct remedial measures and operational changes beyond those required by permit); *United States v. Telluride*, 146 F.3d 1241 (10th Cir. 1998) (restorative injunction to require refilling or creating wetlands for past CWA violations sustained over argument that it was "punitive;" such an equitable remedy is remedial and is similar to disgorgement action, restoring the wetlands to their prior condition before defendant's violations).

Other courts, within the Sixth Circuit and elsewhere, have reached similar results.  In *United States v. Larkins*, 657 F. Supp. 76 (W.D. Ky. 1987), property owners were sued for constructing dikes and levees on wetlands without a permit.  The district court held that the violations entitled the United States "to restoration of the site" under CWA Section 309(b).  *See also United States v. Outboard Marine Corp*., 549 F. Supp. 1036, 1043 (N.D. Ill. 1982) (defendant ordered pursuant to CWA Section 309(b) to clean up its past discharges of PCBs into a harbor and a Lake Michigan tributary by removing contaminated sediments - "such a cleanup remedy fairly can be found within the language of Section 309 (b)"); *United States v. Alcoa, Inc.*, 98 F. Supp. 2d 1031, 1039 (N.D. Ind. 2000) (authorizing removal of contaminated sediments as remedy for defendant's releases in excess of permitted levels so long as removal is roughly proportional to permit violations).

Thus, analogous precedents under the CWA support this Court's authority to fashion a remedy under the CAA that seeks, insofar as possible, to redress the wrong for which Defendants are responsible and effectuate the goals of the CAA.

- 11 -

E.    **Requiring SO$_2$ Allowance Surrenders is Consistent with the
      CAA and with the PSD and Title IV Programs Under the CAA**

An SO$_2$ allowance surrender remedy is consistent with the CAA's fundamental

objectives.  Congress declared that one of the purposes of Subchapter I of the CAA (which

includes SIP and PSD programs) is "to protect and enhance the quality of the Nation's air

resources ...." 42 U.S.C. § 7401(b)(1).  And it declared that one of the purposes of the PSD

program is "to protect public health and welfare from any actual or potential adverse effect

which in the Administrator's judgment may reasonably be anticipate [*sic*] to occur from air

pollution ... notwithstanding attainment and maintenance of all national ambient air quality

standards." 42 U.S.C. § 7470(1).

An allowance surrender remedy would not be inconsistent with Title IV of the CAA,

which governs such allowances.  SO$_2$ emission allowances allocated to Defendants under Title

IV of the CAA are not a property right and may be terminated.  42 U.S.C. § 7651b(f).[6]

Requiring Ohio Edison to surrender its excess allowances would also be consistent with

Congressional intent behind the allocation of Title IV allowances under the CAA.  Congress

found that "the problem of acid deposition is of national and international significance" and that

"reduction of total atmospheric loading of sulfur dioxide and nitrogen oxides will enhance

_____

[6] Nothing in Title IV "shall be construed to limit the authority of the United States to terminate
or limit such authorization" and that nothing in the allowance provision should be construed "as
affecting the application of, or compliance with, any other provision of [the CAA]."  42 U.S.C. §
7651b(f).  Notably, the language in the House Bill that provided that "Allowances under this title
may not be extinguished by the Administrator" was deleted.  H. Rep. 101-490 (May 17, 1990) at
102 (proposed section 503(f)).  As explained by Senator Baucus, in the "Clean Air Conference
Report,"reprinted in *A Legislative History of the Clean Air Act Amendments of 1990*, vol. 1, at
1001, nothing prevents the government from revoking allowances: "Allowances are but the
means of implementing an emissions limitation program, which can be altered in response to
changes in the environment or for other sound reasons of public policy."  *Id.* at 1034.

protection of the public health and welfare and the environment."  42 U.S.C. § 7651(a)(3), (6).

Congress further stated that one of the purposes of Title IV "is to reduce the adverse effects of

acid deposition through reductions in annual emissions of sulfur dioxide ...." 42 U.S.C. §

7651(b).[7]

> F.     An SO$_2$ Allowance Surrender Remedy Would Be "Other
>        Appropriate Relief" to Ensure Effective Relief and to
>        Adequately Redress the Violations in This Case

Similar to remedies ordered by courts in addressing CWA violations, an allowance

surrender remedy is in the nature of additional equitable relief, and would serve two principal

purposes:  First, it would help ensure that the Court's remedial order as a whole will result in

substantial actual air pollution reduction.  As discussed above, this purpose is consistent with the

CAA's fundamental objectives.  Second, such a remedy would redress past violations by

removing from the environment future tons of pollution to compensate for excess tons of

pollution emitted as a result of Defendants' violations.  In this respect, it will directly address the

---

[7]      Requiring Ohio Edison to surrender its excess allowances would also be consistent with
Congressional intent behind the allocation of Title IV allowances under the CAA.  In directing
how allowances were to be allocated under Title IV, Congress intended to provide an incentive
for plants to voluntarily implement controls, thereby freeing up allowances to be sold.  "Clean
Air Conference Report,"reprinted in *A Legislative History of the Clean Air Act Amendments of
1990*, vol. 1, at 1000.  Here, Defendants knowingly or recklessly violated the law, illegally
emitted over a million tons of SO2, and have made it clear that they will not install controls on
the Sammis  plant absent a court order to do so.  Depriving Defendants of allowances freed up as
a result of their forced, long-over due, compliance with the PSD requirements of Title I is not
inconsistent with Congressional aims in Title IV.  In addition, the relinquishment of certain of
these allowances would simply put Defendants back where they would have been had they
timely complied with the PSD requirements.  This is so because when Title IV allowances were
allocated in accordance with the formula dictated by the 1990 CAA Amendments, plants that
were controlled under PSD to the levels required under the BACT requirement were allocated
approximately one-half the allowances that were allocated to dirtier plants of the same size.  *See*
42 U.S.C. § 7651d(d)(1).  Thus, at least Sammis Unit 5 received twice the allowances it should
have.

nature of the wrong in this case and help to undo at least some of the environmental insult that

the past violations caused.

In fashioning appropriate relief, the Court should consider the adequacy and effectiveness

of other legal relief, i.e., civil penalties, to achieve both of these purposes.[8]  Civil penalties,

while serving the important function of deterring violations of the CAA,[9] will not assure the

improvement of air quality, nor can they compensate for past excess pollution.  As the Sixth

Circuit has stated, "[A]n injury is not fully compensable by money damages if the nature of the

plaintiff's loss would make damages difficult to calculate." *United States v. Miami Univ.*, 294

F.3d 797, 819 (6th Cir. 2002), quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.

1992).   "Environmental injury, by its nature, can seldom be adequately remedied by money

damages and is often permanent or at least of long duration, i.e. irreparable."  *Amoco Production

Co. v. Village of Gambell, AK*, 480 U.S. 531, 541 (1987).

Likewise, the Court should consider the effectiveness of other equitable relief to achieve

the dual purposes served by an allowance surrender remedy.  A court order requiring the

installation of BACT at the Sammis plant will free up $SO_2$ emissions allowances under Title IV

of the CAA, which Defendants could then sell to other operators or transfer to Defendants' other

plants.  To the extent that this leads to the emission of additional tons of $SO_2$ elsewhere or in the

future, or decreases the effectiveness of the Title IV trading system in reducing total $SO_2$

emissions, it would reduce the beneficial effect on the environment of a court order requiring

---

[8] Traditional standards for ordering injunctive relief include the inadequacy of legal remedies.  O.M. Fiss
& D. Rendleman, *Injunctions* 59 (2d ed. 1984) alternatively, cite *United States v. Midwest Suspension &
Brake*, 824 F. Supp. 713, 738 (E.D. Mich. 1993) (irreparable injury and inadequacy of legal remedies).]

[9] *See supra* note 5.

BACT to be installed at Sammis.  Nor will an order requiring installation of BACT achieve the

second purpose of an allowance surrender remedy because, while it will reduce future emissions

from the Sammis plant, it will not compensate the environment or those downwind from the

Sammis plant for years of excess emissions caused by Defendants' failure to comply with the

law.[10]

## CONCLUSION

For the foregoing reasons, the Court has the authority to fashion appropriate relief in this

action, which may include an order requiring surrender and retirement of $SO_2$ emission

allowances allocated to Defendants under Title IV of the CAA.


Dated: June 25, 2004

Respectfully Submitted,

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division

/s/ Jerome W. MacLaughlin
JEROME W. MACLAUGHLIN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
Department of Justice
P.O. Box 7611
Washington, D.C.  20530
(202) 616-7162

---

[10]  At trial, Plaintiffs will prove that Defendants' illegal excess emissions of $SO_2$ were not less than 1.2 million tons, and more likely well above 1.8 million tons.  Plaintiffs plan to ask this Court, as one element of the relief, to require Defendants to purchase an equivalent number of tons of $SO_2$ allowances and retire them.  Retiring allowances freed up as a result of installing controls at Sammis is another way to achieve the same result.

- 15 -

GREGORY G. LOCKHART
United States Attorney
Southern District of Ohio

MARK D'ALESSANDRO (0019877)
Assistant United States Attorney
280 N. High Street, Fourth Floor
Columbus, Ohio  43215
(614) 469-5715

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing United States' Memorandum of Law Regarding the Scope of the Court's Authority to Order Surrender of Emission Allowances was served on the following on the 25th day of June, 2004 by the Court's electronic filing service, and by fax to Mr. King:

James King
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, Ohio 43215-6194

Michael Hardy
Thompson Hine, LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291

Paul Gutermann
Akin, Gump, Strauss, Hauer & Feld, LLP
Robert Strauss Bldg.
1333 New Hampshire Ave., N.W.
Washington, D.C.  20036-1564

Donell R. Grubbs
Buckley King LLP
One Columbus
10 W. Broad St.,
Suite 1300
Columbus, Ohio 43215
614-461-5600

Robert M. Rosenthal
Assistant Attorney General
Office of the Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

Kevin Auerbacher
Deputy Attorney General
State of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, New Jersey 08625-0093

Jose Suarez
Assistant Attorney General
Office of the Attorney General
State of Connecticut
55 Elm Street
P.O. Box 120
Hartford, Connecticut 06141-0120

John Matson
Associate Regional Counsel
Office of Regional Counsel (C-14J)
U.S. EPA, Region 5
77 W. Jackson Boulevard
Chicago, Illinois 60604-3590

Mark D'Alessandro
Assistant United States Attorney
Office of the United States Attorney
Southern District of Ohio
280 North High Street, Fourth Floor
Columbus, Ohio  43215

**/s/ Jerome W. MacLaughlin**
Jerome W. MacLaughlin
Trial Attorney
Department of Justice
P.O. Box 7611

Washington, D.C.  20530
(202) 616-7162